NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RONNIE DAVIS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-3028 (RMB) |
| v. | : | |
| | : | |
| CUMBERLAND COUNTY DEPARTMENT | : | |
| OF CORRECTIONS et al., | : | **OPINION** |
| | : | **APPLIES TO ALL ACTIONS** |
| Defendants. | : | |
| | : | |
| RONNIE DAVIS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-3791 (RMB) |
| v. | : | |
| | : | |
| WARDEN BALICKI et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| RONNIE DAVIS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-3792 (RMB) |
| v. | : | |
| | : | |
| GENEAN DOYLE, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| RONNIE DAVIS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-3793 (RMB) |
| v. | : | |
| | : | |
| REBECCA HANNAH, | : | |
| | : | |
| Defendant. | : | |
| | : | |

. . . continued

. . . continued

```
                                        :
RONNIE DAVIS,                           :
                                        :
            Plaintiff,      :    Civil Action No. 13-3794 (RMB)
        v.                  :
                                        :
JEANNINE WILTSEY,                       :
                                        :
            Defendant.      :
                            :
```

```
                                        :
RONNIE DAVIS,                           :
                                        :
            Plaintiff,      :    Civil Action No. 13-3795 (RMB)
        v.                  :
                                        :
FRANK GREEN et al.,                     :
                                        :
            Defendants.     :
                            :
```

```
                                        :
RONNIE DAVIS,                           :
                                        :
            Plaintiff,      :    Civil Action No. 13-3796 (RMB)
        v.                  :
                                        :
OFFICER ARMSTRONG et al.,               :
                                        :
            Defendants.     :
                            :
```

```
                                        :
RONNIE DAVIS,                           :
                                        :
            Plaintiff,      :    Civil Action No. 13-3797 (RMB)
        v.                  :
                                        :
SGT. WRONYON et al.,                    :
                                        :
            Defendants.     :
                            :
```

. . . continued

. . . continued

```
                                    :
RONNIE DAVIS,                       :
                                    :
          Plaintiff,                :    Civil Action No. 13-4233 (RMB)
     v.                             :
                                    :
RICH BROWN,                         :
                                    :
          Defendant.                :
_____       :
                                    :
RONNIE DAVIS,                       :
                                    :
          Plaintiff,                :    Civil Action No. 13-4234 (RMB)
     v.                             :
                                    :
OFFICER MACCORI,                    :
                                    :
          Defendant.                :
_____       :
                                    :
RONNIE DAVIS,                       :
                                    :
          Plaintiff,                :    Civil Action No. 13-4235 (RMB)
     v.                             :
                                    :
MOSSES REOS,                        :
                                    :
          Defendant.                :
_____       :
                                    :
RONNIE DAVIS,                       :
                                    :
          Plaintiff,                :    Civil Action No. 13-4236 (RMB)
     v.                             :
                                    :
SGT. ORTIZ,                         :
                                    :
          Defendants.               :
_____       :
```

. . . continued

. . . continued

```
_____
                          :
RONNIE DAVIS,             :
                          :
          Plaintiff,      :    Civil Action No. 13-4237 (RMB)
      v.                  :
                          :
OFFICER VOHLAND,          :
                          :
          Defendant.      :
_____    :
                          :
RONNIE DAVIS,             :
                          :
          Plaintiff,      :    Civil Action No. 13-4606 (RMB)
      v.                  :
                          :
CORIZON HEALTHCARE et al.,:
                          :
          Defendants.     :
_____    :
                          :
RONNIE DAVIS,             :
                          :
          Plaintiff,      :    Civil Action No. 13-4610 (RMB)
      v.                  :
                          :
CORIZON HEALTHCARE et al.,:
                          :
          Defendants.     :
_____    :
                          :
RONNIE DAVIS,             :
                          :
          Plaintiff,      :    Civil Action No. 13-5365 (RMB)
      v.                  :
                          :
CORIZON HEALTHCARE et al.,:
                          :
          Defendants.     :
_____    :
```

**OPINION**
**APPLIES TO ALL ACTIONS**

**BUMB**, District Judge:

Page 4

These matters come before the Court upon the Clerk's receipt of Plaintiff's sixteen complaints accompanied by his applications to proceed in these actions in forma pauperis ("IFP"), with two of those applications, that is, the first and last ones, being complete.  See Davis v. Cumberland County Dep't Corr., Civ Action No. 13-3028, ECF No. 1-1; Davis v. Horizon Healthcare, Civ. Action No. 13-5365, ECF No. 1-1.  In light of these two IFP applications and the absence of three disqualifying "strikes," the Court will direct filing of twelve of Plaintiff's complaints and assessment of the applicable filing fees in connection with each such filing.  See 28 U.S.C. § 1915(b); see also Hairston v. Gronolsky, 348 F. App'x 716 (3d Cir. 2009) (a prisoner's legal obligation to prepay his filing fee or to duly obtain in forma pauperis status in connection with commencement of a legal action is automatically incurred by the very act of the litigant initiating a legal action) (relying on Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)).  With regard to the remaining four matters (where Plaintiff raised claims virtually duplicative of those raised in Plaintiff's other above-captioned actions), the Court will direct administrative termination of those matters, without filing of the complaints and without assessment of the filing fee in connection with any of those duplicative actions.[1]

_____

[1] Compare Izquierdo v. State, 2013 U.S. App. LEXIS 15533, at *2-3 and n.1 (3d Cir. July 25, 2013), stating:

The power of a federal court to [administratively terminate duplicative matters and, thus,] prevent duplicative litigation is intended "to foster judicial economy and the 'comprehensive disposition of litigation,'" Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)), and "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" Id. (quoting Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991)).

Porter v. NationsCredit Consumer Disc. Co., 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003); see also Papotto v. Hartford Life & Accident Ins. Co., U.S. App. LEXIS 19660, at *26 (3d Cir. N.J. Sept. 26, 2013) ("administrative closings do not end the proceeding. Rather, they are a practical tool used by courts to prune overgrown dockets and are particularly useful in circumstances in which a case, though not dead, is likely to remain moribund") (citation, ellipses and internal quotation marks omitted).

---

[T]he District Court abused its discretion [when it declined to direct assessment of filing fee because the plaintiff's claims appeared potentially without merit]. In this Circuit, leave to proceed IFP is determined solely on the basis of indigence. [See Deutsch v. United States, 67 F.3d 1080,] 1084 n.5 [(3d Cir. 1995)]. If a plaintiff is unable to pay the filing fee, leave to proceed IFP should be granted [and assessment of fee directed]. [See] id. [Once] leave is granted, the District Court . . . may decide whether to dismiss the complaint under 28 U.S.C. § 1915(e)(2). [See] id. What a District Court . . . may not do . . . is deny leave to proceed IFP on the basis of non-financial considerations [unless the litigant is an abusive filer, as in Deutsch, 67 F.3d at 1084 n.5]. See Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir. 1976).

Furthermore, since the Prison Litigation Reform Act of 1995 obligates this Court to engage in <u>sua</u> <u>sponte</u> screening when a prisoner files a civil complaint seeking redress from a governmental entity, officer, or an employee of a government entity, <u>see</u> 28 U.S.C. §1915A(a), each of Plaintiff's non-duplicative pleading will be screened, under § 1915A, as detailed below.  The Court must determine if Plaintiff's challenges sufficiently state a claim sufficient under Rule 8(a) or if they are "frivolous, malicious, or fail to state a claim upon which relief may be granted."  28 U.S.C. §1915A(b)(1).

## I.    STANDARD OF REVIEW AT THE <u>SUA</u> <u>SPONTE</u> SCREENING STAGE

In determining the sufficiency of a <u>pro se</u> complaint, the Court must construe it liberally.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>see also</u> <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).   The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>  Thus, the Court must first "take note of the elements a plaintiff must plead to state a claim."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675  (2009).  The Court must then accept as true all of a plaintiff's well-pleaded factual allegations.  <u>See</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d  203,  210-11 (3d  Cir. 2009).   The Court, however, must disregard any conclusory allegations proffered in the complaint.  <u>See</u> <u>id.</u>  For example, the Court should ignore legal

conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Once the well-pleaded facts have been distilled and the conclusory allegations are fully factored out, the Court must determine whether these well-pled facts "are sufficient to show that plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 556 U.S. at 679). Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Plausibility "is not akin to a 'probability requirement,'" rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 545). Therefore, even well-pled facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief.[2] Fowler, 578 F.3d at 211 (quoting Iqbal, 556 U.S. at 679).

---

[2] However, before conclusively dismissing a complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must grant the plaintiff leave to amend the complaint unless amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (leave to amend the pleadings is, generally, freely given).

## II.  FACTUAL ALLEGATIONS

### A.  April 2013 Submission

Plaintiff's first pleading in the series of complaints was
filed on April 24, 2013.  See Davis v. Cumberland County Dep't
Corr. ("Cumberland County"), Civ. Action No. 13-3028, ECF No. 1,
at 3.  It named the following individuals and group of
individuals as defendants: (a) Warden Balicki ("Balicki"); (b)
Officer Maccori ("Maccori"); (c) Officer Vohland ("Vohland"); (d)
Officer Brown ("Brown"); (e) unspecified "medical nursing staff
and doctors"; (f) Frank Green ("Green"), an inmate; (g) Moses
Reos ("Reos"), also an inmate; and (h) another inmate, whose
first name was Jason ("Jason").  Id. at 6-7.  The complaint
asserted that, on November 5, 2012, Plaintiff was assaulted by
Green, Reos and Jason and, as a result of that attack, suffered a
broken jaw and broken nose, injuries to his eye and neck, and
lacerations on his face.  See id. at 11.  Plaintiff stated that
he received medical treatment for his injuries, including a
surgery; he also averred that the attack could have been arranged
by Vohland but offered no supporting facts.  See id. at 11-12.

Plaintiff also asserted unspecified "abuse and cruelty [by]
medical nursing staff" Id. at 12.  In addition, he alleged that:
(a) on January 1, 2013, Maccori "push[ed Plaintiff] and shoved
[Plaintiff's] face roughly into a steel door . . . causing [the]
wires in [Plaintiff's] mouth to bust apart," id.; (b) during

"[t]he first week of March 2013, . . . Brown . . . threaten[ed] Plaintiff] with [future] bodily harm," id.; and (c) Balicki did not take action when Plaintiff filed an administrative request to "press charges." Id.

**B.   June 20, 2013 Submissions**

On June 20, 2013, Plaintiff commenced seven more civil matters. See Davis v. Balicki ("Balicki"), Civ. Action No. 13-3791; Davis v. Doyle, Civ. Action No. 13-3792; Davis v. Hannah, Civ. Action No. 13-3793; Davis v. Wiltsey ("Wiltsey"), Civ. Action No. 13-3794; Davis v. Green, Civ. Action No. 13-3795; Davis v. Armstrong ("Armstrong"), Civ. Action No. 13-3796; and Davis v. Wronyon ("Wronyon"), Civ. Action No. 13-3797.

**1.   The *Balicki* Action**

The Balicki complaint named fourteen individuals and one entity as defendants, namely, Balicki,[3] Maccori, Vohland, Brown, Green, Reos and Jason, as well as Officer Armstrong ("Armstrong"), Sergeant Wronyon ("Wronyon"), Officer Ortiz ("Ortiz"), Lieutenant Fauconniere ("Fauconniere"), nurse Doyle ("Doyle"), nurse Wiltsey ("Wiltsey"), nurse Hannah ("Hannah") and "Horizon Healthcare," i.e., the employer of Doyle, Wiltsey and Hannah (as well as of other medical staff rendering services at Plaintiff's place of confinement). See Davis v. Balicki, Civ.

_____

[3] That pleading clarified that Plaintiff based all his claims against Balicki on Balicki's status as the warden. See Davis v. Balicki, Civ. Action No. 13-3791, ECF No. 2, at 2.

Action No. 13-3791, ECF No. 2, at 1.  The <u>Balicki</u> pleading re-
alleged that Plaintiff was attacked by Green, Reos and Jason on
November 5, 2012, <u>see id.</u>, ECF No. 1, at 3; it also alleged that
certain unspecified officers were liable to him because they were
not at their duty stations during the attack. <u>See id.</u> at 4.  The
pleading re-confirmed that Plaintiff was examined and treated by
medical staff after the attack; it also elaborated on the post-
attack events by stating that Plaintiff was scheduled for a
surgery and, after the surgery, placed in an infirmary where he
received pain reducing medication.  <u>See id.</u>

    In addition, the <u>Balicki</u> pleading reiterated that, on
January 1, 2013, Maccori "push[ed Plaintiff] and shoved [his]
face," and that event necessitated additional surgery, which was
duly rendered.  <u>Id.</u> at 5.  Plaintiff also alleged that, on a
later date, Maccori "harassed" him by expletive language.  <u>Id.</u>

    Then, backtracking to October 2012, the <u>Balicki</u> complaint
alleged that Vohland must have "threatened [Plaintiff] with
[future] bodily harm" when Vohland allegedly stated that he would
"f--k [Plaintiff] up and go [on] top [of Plaintiff]"; Plaintiff
clarified that this statement demonstrated that the November 5,
2012, attack had to be arranged for by Vohland who, Plaintiff
speculated, must have compensated Green, Reos and Jason with

cigars and controlled substances for their promise to assault Plaintiff.[4]  Id.

Plaintiff then alleged that during March and May of 2013: (a) Brown must have "threaten[ed Plaintiff] with serious bodily harm" when Brown allegedly stated that he would "see" that Plaintiff is assaulted again by inmates upon Plaintiff's return from the infirmary to the general prison population; and (b) Armstrong, too, "threaten[ed Plaintiff] with serious bodily harm" when Armstrong, allegedly, used expletives and stated that he would "break [Plaintiff's] jaw and f--k [Plaintiff] up."  Id. at 6.

The Balicki complaint closed with Plaintiff's unspecified assertions of "abuse, cruelty and harass[]ment" by Doyle, Wiltsey and Hannah, and with a statement that he suffered "major treatment delays" for unspecified "serious medical needs."  Id. at 7-8.[5]  His legal claim based on these facts asserted "negligence" and "breach of duty" by Defendants.  Id. at 11.

_____

[4] Plaintiff bases that speculations on his assertion that, a few weeks before the attack, he: (a) witnessed Vohland's "full hand contact" with Green; and, shortly thereafter, (b) observed Green, Reos and Jason smoking "marijuana and black [and] mild cigars."  Balicki, Civ. Action No. 13-3791, ECF No. 1, at 6.

[5] In addition, Plaintiff speculated that he must have suffered an exposure to "100% germs" which, Plaintiff believes, would "cause [him] disease [so severe that he would be on a] hospice line to heart."  Davis v. Balicki, Civ. Action No. 13-3791, ECF No. 1, at 8.  Plaintiff's amended pleading filed in this matter, totaling 65 pages, merely provided the Court with names of Defendants.  See id., ECF. No. 3.

## 2.    The *Doyle*, *Hannah* and *Wiltsey* Actions

Plaintiff's complaint filed in <u>Davis v. Doyle</u> ("<u>Doyle</u>"),
Civ. Action No. 13-3792, asserted that Doyle, a nurse, violated
Plaintiff's rights because she contacted the surgeon who operated
Plaintiff and, while not holding a doctor's license herself,
recommended that a surgeon not extend Plaintiff's antibiotic
treatment beyond a certain date (and the surgeon agreed with that
recommendation).   The pleading in <u>Davis v. Hannah</u> ("<u>Hannah</u>"),
Civ. Action No. 13-3793, asserted that Hannah, also a nurse,
violated Plaintiff's rights by being "disrespectful" and acting
"cruel," since she "refuse[d] to give [Plaintiff an unspecified]
medical treatment."  <u>Id.</u> at 4.[6]  Plaintiff's <u>Wiltsey</u> complaint
asserted that Wiltsey, also a nurse, violated his rights by "very
abusive cruelty," namely, by placing Plaintiff in a locked room
during his transfer from surgery to the infirmary.[7]  <u>Davis v.
Wiltsey</u>, Civ. Action No. 13-3794, ECF No. 1, at 4.

## 3.    The *Green*, *Armstrong* and *Wronyon* Actions

---

[6] In addition, Plaintiff asserts that Hannah "locked
[Plaintiff] up with a [peripherally inserted central catheter,
known as a PICC, inserted in Plaintiff's] heart . . . when [he]
was out to be move[d] . . . from the infirmary after surgery."
<u>Davis v. Doyle</u>, Civ. Action No. 13-3792, ECF No. 1, at 4.

[7] Plaintiff developed an opinion that the room where he was
placed en route to the infirmary had to be infested by "germs,"
and the "germs" infested Plaintiff's heart through the PICC line.

Plaintiff's complaint in <u>Davis v. Green</u> ("<u>Green</u>"), Civ. Action No. 13-3795, reiterates Plaintiff's claims against his alleged attackers, <u>i.e.</u>, inmates Green, Reos and Jason.  <u>See</u> <u>id.</u>, ECF No. 1.  The complaint in <u>Armstrong</u> reiterates Plaintiff's claim that Armstrong used expletives while threatening Plaintiff's with future harm.[8]  <u>See</u> <u>Davis v. Armstrong</u>, Civ. Action No. 13-3796, ECF No. 1.  Finally, Plaintiff's pleading in <u>Wronyon</u> alleges that Wronyon and Ortiz were attorneys who violated Plaintiff's rights by not pursuing legal charges against the correctional facility where Plaintiff was confined (or against the officers employed at that facility, or the inmates who attacked Plaintiff).  <u>See</u> <u>Wronyon</u>, Civ. Action No. 13-3797, ECF No. 1, at 4.

**C.   July 2013 Submissions**

**1.   Early July 2013 Submissions**

Three weeks after commencing the above-detailed seven actions, Plaintiff submitted five more civil complaints.  <u>See</u> <u>Davis v. Brown</u>, Civ. Action No. 13-4233; <u>Davis v. Maccori</u>, Civ. Action No. 13-4234; <u>Davis v. Reos</u>, Civ. Action No. 13-4235; <u>Davis v. Ortiz</u>, Civ. Action No. 13-4236; and <u>Davis v. Vohland</u>, Civ.

---

[8] Plaintiff's amended pleading filed in that matter totaled 65 pages but it did not elaborate on Plaintiff's facts; rather, it merely provided the Court with names of Defendants.  <u>See</u> <u>Davis v. Armstrong</u>, Civ. Action No. 13-3792, ECF No. 3.

Action No. 13-4237.  The pleadings in these matters reiterated the already familiar claims.  Specifically:

In <u>Davis v. Brown</u>, Civ. Action No. 13-4233, Plaintiff reiterated his allegations that Brown threatened him with future harm.  In <u>Davis v. Maccori</u>, Civ. Action No. 13-4234, Plaintiff reasserted that Maccori pushed him and "shoved" Plaintiff's face into a door, causing Plaintiff's post-surgical injuries to open.[9] In <u>Davis v. Reos</u>, Civ. Action No. 13-4235, Plaintiff re-alleged that Reos was one of the inmates who attacked him on November 5, 2012.  In <u>Davis v. Ortiz</u>, Civ. Action No. 13-4236, Plaintiff repeated his allegations that Ortiz violated his rights by not commencing a penal proceeding against the officers and against his attackers.  Finally, in <u>Davis v. Vohland</u>, Civ. Action No. 13-4236, Plaintiff reiterated that Vohland threatened "to f--k Plaintiff" and elaborated on his deducement that Vohland must have orchestrated the November 5, 2012, attack by stating that, a few weeks prior to the attack, Vohland transferred Plaintiff from a certain unit in the prison to another unit within the facility, <u>i.e.</u>, seemingly the unit where Plaintiff's then-future attackers had been housed and where the attack eventually occurred.[10]

---

[9] Plaintiff's amended pleading, totaling 65 pages, merely provided the Court with names of defendants, without adding any factual allegations.  <u>See</u> <u>Davis v. Maccori</u>, Civ. Action No. 13-4234, ECF No. 2.

[10] While all Plaintiff's later-filed complaints kept largely reiterating and detailing Plaintiff's claims against Defendants

## 2.   Late July 2013 Submissions

Plaintiff's next two pleadings, submitted three weeks after he commenced the above-detailed five actions, challenged the medical care Plaintiff received during April and July of 2013. See Davis v. Corizon Healthcare ("Horizon-I"),[11] Civ. Action No. 13-4606; and Davis v. Corizon Healthcare ("Horizon-II"), Civ. Action No. 13-4610.

The Horizon-I complaint asserted that, in April 2013, Plaintiff noticed scar-like marks on the right side of his chest and complained of the same to a certain nurse named Mickey, who reported Plaintiff's condition to Doyle.  See Horizon-I, ECF No. 1, at 3.  Doyle: (a) directed laboratory testing of Plaintiff's scar-like tissue; and, when it tested positive to Methicillin-resistant Staphylococcus aureus ("MRSA"), a highly contagious type of staph bacteria, (b) directed Plaintiff's quarantine and 10-to-14-day antibiotic treatment.  See id. at 3-4.  Plaintiff, however, asserting that MRSA caused him to "suffer[] severe an[d] extreme . . . emotional distress," id. at 4, and, therefore, named Balicki and Doyle as defendants in Horizon-I, alleging that they violated his rights during his MRSA treatment because the

_____

named in his first two submissions, Plaintiff made only a single reference to Fauconniere, who was named as a defendant in Balicki.

   [11] The Court presumes that Plaintiff's reference to "Corizon Health Care" was meant to be a reference to "Horizon Healthcare."

disease left twenty scars on his body. <u>Id.</u> at 4-6. In addition, reflecting on the medical treatment of his post-November 5, 2012, injuries, Plaintiff asserted that Doyle violated his rights because the oral surgery took place not immediately but a few (<u>i.e.</u>, five or ten) days after the attack. See <u>id.</u> at 4.[12]

The pleading filed in <u>Horizon-II</u> named, as Defendants, Horizon Healthcare, Balicki, Doyle, Wiltsey and one other nurse, Simmons ("Simmons"). <u>See Horizon-II</u>, ECF No. 1, at 1-2. This complaint asserted that, on July 20, 2013, having insomnia and feeling depressed, Plaintiff self-qualified his sleeplessness and emotions as a "mental health problem" and asked Simmons for medications to treat that problem. <u>See id.</u> at 2-4 (clarifying that Plaintiff was unable to sleep because the sound of a door opening and closing prevented him from falling asleep). Having his request declined by Simmons, Plaintiff asserted that Simmons' response was "very abusive" to Plaintiff; he also added that

_____

[12] Plaintiff's amended pleading filed in that matter added another defendant, Dr. Dghetto ("Dghetto"). <u>See Horizon-I</u>, ECF No. 2, at 4. The amended pleading reflected on the events other than Plaintiff's April 2013 MSRA infection or his November 2012, post-attack treatment. <u>See, generally</u>, ECF No. 2. Rather, the amended complaint focused on the events of July 2013, when Plaintiff developed concerns about the outcome of his post-attack surgery and requested to be sent for an MRI but had that request denied by Dghetto. That denial was conveyed to Plaintiff by a certain Dr. Wynn ("Wynn"). <u>See id.</u> at 4. The amended pleading, correspondingly, named Dghetto and Wynn, as well as Doyle and Balicki, as defendants clarifying that Doyle and Balicki were named as defendants because of Balicki's position as warden and Doyle's position as the head nurse at the facility.

Wiltsey must have violated his rights when she requested prison officers to remove Plaintiff from the premises of the prison's medical department.[13]  Id. at 3.

The complaint closed with Plaintiff's opinion that Simmons and Wiltsey's actions had to be qualified as "physical and mental threats" against Plaintiff.  Id. at 5.

**D.   September 2013 Submissions**

Finally, on September 9, 2013, the Clerk received one more civil complaint from Plaintiff, i.e., his sixteenth submission. See Davis v. Corizon Healthcare, Civ. Action No. 13-5365, ECF No. 1 (RMB) ("Horizon-III").  That complaint named, as Defendants, Horizon Healthcare, Dghetto and Doyle, see id. at 3, and asserted, again, that Dghetto and Doyle declined Plaintiff's request for MRI and that Doyle also denied Plaintiff "medical treatment for [his] special medical need," i.e., for Plaintiff's self-diagnosed mental problem.  Id. at 4.  In addition, Plaintiff asserted that: (a) Dghetto violated his rights when Dghetto disagreed with Plaintiff's opinion that he needed additional

---

[13] The allegations in the Horizon-II complaint indicate that Plaintiff was offered certain medications but did not wish to swallow the pills whole and insisted on having them crushed into powder prior to consumption.  See Horizon-II, ECF No. 1, at 3-4. Plaintiff's insistence on having the pills crushed and his refusal to consume the pills whole, together with his refusal to leave the premises of the medical department, caused Wiltsey to request officers' assistance in her efforts to remove Plaintiff from the medical department premises.  See id.

surgery; and (b) unspecified doctors and nurses violated his rights because they acted with "major abuse and cruelty." Id.[14].

### E.   Grouping of Allegations

The above-detailed allegations could be put into twenty groups:

### 1.   Allegations Against Horizon Healthcare

Horizon was named as a defendant in the Balicki, Horizon-I, Horizon-II and Horizon-III actions.  Plaintiff's allegations did not provide the Court with any facts implicating Horizon itself; rather, all Plaintiff's references to Horizon stem from it being the employer of the medical staff at Plaintiff's prison facility.

---

[14] An attachment to that complaint added Balicki and Wynn as Defendants and stated that Balicki was named because of her warden position, while Wynn was named simply because he was employed at the facility.  The attachment also alleged that Doyle scheduled Plaintiff for two treatments, one by an oral surgeon and another by an oral dentist, and that Doyle informed Plaintiff of this fact on July 15, 2013.  See Horizon-III, ECF No. 1, at 8. Although the attachment is silent about the dates of these scheduled treatments, Plaintiff asserted that Dghetto must have refused to send Plaintiff for an oral or dental treatment simply because these treatments had not taken place yet, and Plaintiff was still having the original surgical wires in his mouth.  See id.  In conjunction with that assertion, Plaintiff alleged that Dghetto, Wynn and Doyle must have violated his rights because they did not send him for an unspecified "special need medical treatment." See id. at 8-9.  Furthermore, Plaintiff asserted that his rights were violated because his administrative grievances were left without response, see id. at 9; he also stated that his First Amendment rights were violated by a retaliation through "threat[s] . . . with physical violence."  See id.  Plaintiff did not specify who threatened him, when and in which terms; however, his allegations made is sufficiently clear that, as of now, no harm had happen to Plaintiff and no retaliatory action had taken place.

### 2.   Allegations Against Balicki

Balicki, the warden, was named as a defendant in <u>Cumberland County</u>, <u>Balicki</u>, <u>Horizon-I</u>, <u>Horizon-II</u> and <u>Horizon-III</u>.  The bulk of Plaintiff's allegations against her stem from her position as the warden; his reference to Balicki's own "action" is limited to the claims that she did not "press charges" (presumably, against the prison officers and inmates) when Plaintiff requested so, and that she did not respond to his administrative grievances.

### 3.   Allegations Against Maccori

Plaintiff's challenges against Maccori are based on the allegation that, on January 1, 2013, Maccori pushed Plaintiff with such a force that Plaintiff's post-surgical stitches opened and, thus, necessitated another surgery.  These allegations are raised in the <u>Cumberland County</u>, <u>Balicki</u> and <u>Maccori</u> actions.

### 4.   Allegations Against Vohland

Plaintiff's challenges against Vohland are two-fold.  First, Plaintiff asserted that, in October 2012, Vohland threatened him by stating that he would "f--k [Plaintiff] up and go [on] top" of him.  Second, Plaintiff alleges that, a few weeks prior to the November 5, 2012, Vohland: (a) directed Plaintiff's transfer from one unit to another unit of the prison facility; and (b) had a hand contact with one of Plaintiff's then-future attackers and, shortly thereafter, Plaintiff observed his then-future attackers smoking cigars and marijuana.  Plaintiff speculated that Vohland

must have arranged for the November 5, 2012, attack, by "hiring" Green, Reos, and Jason to harm Plaintiff, and that Vohland must have "paid" these inmates for their promise to attack Plaintiff with controlled substances and cigars.  Those claims are scattered throughout the pleadings submitted in <u>Balicki</u> and <u>Vohland</u>.

### 5.   Allegations Against Brown

The allegations against Brown are stated in the <u>Cumberland County</u>, <u>Balicki</u> and <u>Brown</u> actions, where Plaintiff asserted that Brown threatened him with future harm when Brown stated that he would "see" that Plaintiff gets assaulted by inmates upon Plaintiff's return to the general prison population.  Plaintiff's submissions made thereafter make it sufficiently clear that no such attack has taken place.

### 6.   Allegations Against Green

Plaintiff's allegations against Green, <u>i.e.</u>, one of Plaintiff's alleged attackers, focus on the November 5, 2012, attack.  These allegations are raised in the <u>Cumberland County</u>, <u>Balicki</u> and <u>Green</u> actions.

### 7.   Allegations Against Reos

Plaintiff's allegations against Reos, another alleged attacker, focus on the November 5, 2012, attack and are raised in the <u>Cumberland County</u>, <u>Balicki</u> and <u>Reos</u> matters.

### 8.   Allegations Against Jason

Plaintiff's allegations against Jason, the third alleged attacker, are raised in Cumberland County and Balicki.

### 9.   Allegations Against Wronyon

Plaintiff's allegations against Wronyon stem from his belief that Wronyon was an attorney and, in Plaintiff's opinion, he was entitled to demand Wronyon's commencement of criminal proceedings against Plaintiff's correctional facility, its staff and Plaintiff's attackers.   These allegations are raised in the Balicki and Wronyon matters.

### 10.   Allegations Against Ortiz

Plaintiff's claims against Ortiz, identical to those raised against Wronyon, are raised in the Balicki and Ortiz actions.

### 11.   Allegations Against Fauconniere

While Plaintiff named Fauconniere as a defendant in the Balicki action, the Court's examination of Plaintiff's pleadings failed to locate any factual allegations implicating Fauconniere.

### 12.   Allegations Against Doyle

Plaintiff's allegations against Doyle appear seven-fold. First, Plaintiff asserted that Doyle was liable to him for the actions or statements of the doctors and nurses employed at the facility because Doyle was the head nurse.   Second, Plaintiff asserted that Doyle violated his rights when she recommended Plaintiff's surgeon not to extend an antibiotic treatment past a certain date.   Third, Plaintiff opined that Doyle violated his

rights when she authorized Plaintiff's placement into a certain
locked room during Plaintiff's transition from surgery to the
infirmary.  Fourth, Plaintiff alleged that Doyle violated his
rights during the treatment of Plaintiff's MSRA infection because
Plaintiff had that infection, and the infection left scars on his
body.  Fifth, Plaintiff asserted that Doyle violated his rights
because he suffered "major treatment delays" for his November 5,
2012, injuries, i.e., because he had to wait either five or ten
days for his post-attack oral surgery.  Sixth, Plaintiff
maintained that Doyle unduly denied treatment to Plaintiff's
self-diagnosed mental problem.  Lastly, Plaintiff asserted that
Doyle violated his rights because, on July 15, 2013, she informed
Plaintiff that she scheduled Plaintiff's treatments by an oral
surgeon and oral dentist, but no such treatments had taken place
by September 3, 2013, and Plaintiff still had the original post-
surgical wiring in his mouth.  This panoply of allegations is
scattered throughout the pleadings submitted in the Balicki,
Doyle, Horizon-I and Horizon-III actions.

### 13.  Allegations Against Wiltsey

Plaintiff's challenges against Wiltsey are three-fold.  In
the Balicki action, Plaintiff asserted, without a clarification,
that Wiltsey was "abusive" during the treatment of his November
5, 2012, injuries.  In the Wiltsey action, he clarified that
Wiltsey violated his rights when she placed him in a certain room

during Plaintiff's transition from surgery to the infirmary.
Finally, in the Horizon-II action, Plaintiff alleged that Wiltsey
violated his rights when she: (a) refused to crush certain pills
into powder upon Plaintiff's statement that he preferred to
consume crushed, rather than whole, pills; and (b) called for
officers' assistance when Plaintiff kept insisting on having his
pills crushed and refused to leave the medical department.

### 14.   Allegations Against Hannah

Plaintiff's allegations against Hannah are two-fold in the
sense that, in the Balicki action, Plaintiff also alleged,
without elaborating, that Hannah was "abusive" and "harassed" him
during the treatment of his November 5, 2012, injuries, while in
his Hannah action, Plaintiff stated that Hannah acted "cruel" and
was "disrespectful" to him by declining to provide Plaintiff with
a certain unspecified medical treatment.

### 15.   Allegations Against Armstrong

Plaintiff's allegations raised in Armstrong elaborate on the
ones raised in the Balicki action.  These two groups of
challenges are based on Armstrong's alleged statement to
Plaintiff that he would "break [Plaintiff's] jaw and f--k
[Plaintiff] up."

### 16.   Allegations Against Dghetto

Plaintiff's claims against Dghetto are raised in the amended
pleading submitted in the Horizon-I action and in the complaint

submitted in <u>Horizon-III</u>.  Those challenges assert that Dghetto
violated Plaintiff's rights when he ignored Plaintiff's
conclusion that his neck was insufficiently healing and declined
Plaintiff's request to order MRI testing.  In addition, Plaintiff
speculated that Dghetto must have obstructed his treatments by an
oral surgeon and oral dentist since Doyle informed Plaintiff that
such treatments were scheduled but the treatments had not yet
taken place.

### 17.  Allegations Against Wynn

Plaintiff's claims against Wynn are also raised in the
amended pleading submitted in <u>Horizon-I</u> and the complaint
submitted in <u>Horizon-III</u>; these claims assert that Wynn violated
Plaintiff's rights by: (a) conveying to Plaintiff's Dghetto's
conclusion that no MRI testing was needed; and (b) simply being
employed at Plaintiff's prison facility.

### 18.  Allegations Against Simmons

Plaintiff's challenges against Simmons, raised in the
<u>Horizon-II</u> action, ensue from: (a) Plaintiff's deducement that
his insomnia and depression should qualify as a "mental health
problem" and should be treated with medications; (b) Plaintiff's
request to Simmons for such medications; and (c) her refusal to
dispense a medication for treatment of Plaintiff's self-diagnosed
condition.

### 19.  Allegations Against Unspecified Medical Staff

In addition to the foregoing claims against specified
Defendants, Plaintiff's <u>Cumberland County</u> and <u>Horizon-III</u>
complaints contain an assertion that unspecified "medical nursing
staff" showed "abuse and cruelty" to Plaintiff.

### 20.   Residual Allegations and References

Finally, Plaintiff's complaint submitted in <u>Cumberland</u>
<u>County</u> contains references to unspecified prison officers, as
well as a reference to the Cumberland County Department of
Corrections ("DOC") and Cumberland County Jail ("Jail").  While
the reference to prison officers appears substantively identical
to Plaintiff's claim raised in <u>Balicki</u> (that unspecified prison
officers violated his rights by being away from their duty posts
at the time when he was attacked), the references to the DOC and
Jail were, seemingly, made without any connection to any facts,
<u>i.e.</u>, merely as a designation of the place of natural Defendants'
employ (or as the place of Plaintiff's attackers' confinement).

### III. LEGAL ANALYSIS: RULES 18 AND 20

#### A.   <u>Requirements of Rules 18 and 20</u>

Rule 20 of the Federal Rules of Civil Procedure governs the
joinder of defendants, while Rule 18 governs the joinder of
claims.  <u>See</u> Fed. R. Civ. P. 18(a), 20(a)(2).  Specifically, Rule
20 provides that "[p]ersons . . . may be joined in one action as
defendants if . . . any right to relief is . . . arising out of
the same transaction, occurrence, or series of transactions."

Fed. R. Civ. P. 20(a)(2)(A).  Rule 18, in turn, provides that
"[a] party asserting a claim . . . may join . . . as many claims
as it has against an opposing party," Fed. R. Civ. P. 18(a), and
Wright and Miller's treatise on federal civil procedure explains
that, where multiple defendants are named, the analysis under
Rule 20 precedes that under Rule 18.  See Charles Allen Wright,
Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure
Civil 3d §1655; see also United States v. Mississippi, 380 U.S.
128, 143 (1965); Ross v. Meagan, 638 F. 2d 646, 650 n.5 (3d Cir.
1981), overruled on other grounds by, Neitzke v. Williams, 490
U.S. 319, 328 (1989) (joinder of defendants is not permitted by
Rule 20 unless both commonality and same transaction requirements
are satisfied).  Consequently, a civil plaintiff may not name
more than one defendant in his original or even amended complaint
unless one claim against each additional defendant is
transactionally related to the claim against the first defendant
and involves a common question of law or fact.  See Fed. R. Civ.
P. 20(a)(2).  Importantly here, claims by incarcerated
individuals are not exempt from the reach of Rules 18 and 20.
See George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007) ("A
scattershot complaint that would be rejected if filed by a free
person . . . should be rejected if filed by a prisoner").

    **B.   Scattershot and Duplicative Complaints**

Two of Plaintiff's actions are prohibited under Rules 18 and 20, see Cumberland County, ECF No. 1 and Balicki, ECF No. 1, because the pleadings raised scattershot challenges against different Defendants involved in unrelated transactions. For example, Plaintiff raises claims based on the November 5, 2012, attack on the medical treatments spanning ten months, and threats with different future harms, a declination to "press charges," as well as retaliatory challenges. See id.

Generally, both complaints are subject to dismissal with leave to replead in accordance with Rules 18 and 20. However, Plaintiff did already so replead when he submitted his other complaints focusing on the actions of individual Defendants or asserting single sets of transactions. Moreover, comparing Plaintiff's claims raised in Cumberland County and Balicki, the Court finds these matters duplicative, because the challenges raised in Balicki offer merely an elaboration on the assertions raised in Cumberland County. The Court, thus, will direct the Clerk to terminate Cumberland County as duplicative of Balicki.[15]

---

[15] The sole aspect in which the Cumberland County pleading is broader than that submitted in Balicki is Plaintiff's reference to the DOC and Jail, terms Plaintiff used interchangeably. However, since these references are stripped of any facts, the Court presumes that these entities, technically designated as "Defendants," were not intended to be named as the parties liable in connection with Plaintiff's claims. Thus, these references are not an obstacle to finding Cumberland County duplicative of Balicki. Importantly, Plaintiff cannot be prejudiced by the finding of duplicativeness, since neither the DOC no Jail is a "person" amenable to § 1983 suit. See Will v. Mich. Dep't of

Furthermore, a comparison of the <u>Balicki</u> challenges to the allegations raised in other actions shows that Plaintiff's <u>Balicki</u> claims – except for: (a) unelaborated reference to Fauconniere; (b) the allegation that certain unspecified prison officers violated Plaintiff's rights by being absent from their duty posts during the attack; and (c) claims against Jason, the third attacking inmate – were already detailed in Plaintiff's other complaints.  Thus, the Court will: (1) construe Plaintiff's unelaborated reference to Fauconniere as an allegation related to his claims that unspecified officers were liable to him for their absence from their duty posts during the attack; and (2) read that allegation as transactionally related, under Rule 20, to Plaintiff's claims against Green, Reos and Jason.  So read, the <u>Balicki</u> complaint is duplicative of the <u>Green</u> and <u>Reos</u> pleadings.

In addition, Plaintiff's allegations in <u>Horizon-III</u> appear substantively indistinguishable from those raised in <u>Horizon-I</u>. Thus, the Court finds <u>Horizon-I</u> duplicative of <u>Horizon-III</u>.[16]

---

State Police, 491 U.S. 58, 71 (1989;) <u>Pettaway v. SCI Albion</u>, 487 F. App'x 766, 768 (3d Cir. 2012); <u>Russell v. City Of Phila.</u>, 428 F. App'x 174 (3d Cir. 2011); <u>Powell v. Cook County Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993); <u>McCoy v. Chesapeake Correctional Center</u>, 788 F. Supp. 890, 893-894 (E.D. Va. 1992).

[16] Correspondingly, Plaintiff's submission of pleadings in four actions, <u>i.e.</u>, <u>Cumberland County</u>, <u>Green</u>, <u>Reos</u> and <u>Horizon-III</u> will not result in assessment of filing fees.  All other matters would be subject to a $350 assessment, each.

Finally, the Court will read Plaintiff's scattered claims against Horizon and remaining natural Defendants as allegations assertable, under Rule 18 (or under Rules 18 and 20, jointly), in Plaintiff's actions where such entity or person was named as the first Defendant (or as allegations assertable in those matters where Plaintiff submitted a pleading, and that pleading was the sole complaint where such Defendant was named).

Therefore, to screen Plaintiff's challenges, the Court will first examine Plaintiff's assertions by the type of claim, and second, apply this analysis to each individual Defendant.

## IV.  LEGAL ANALYSIS: ASSERTED CLAIMS

### A.  <u>Types of Claims</u>

Assessed <u>in</u> <u>toto</u>, Plaintiff's allegations could roughly be subdivided into eight groups, namely: (1) claims based on one's supervisory capacity or employer status; (2) claims asserting denial of medical care; (3) challenges asserting "disrespect," resort to expletive language and other verbal "harassment"; (4) challenges alleging failure to commence a criminal proceeding or to respond to an administrative grievance; (5) challenges against the inmates who attacked Plaintiff; (6) failure-to-protect claims (some rooted in the officers' alleged absence from their duty stations, while others rooted in the alleged orchestration of the attack); (7) excessive force claims; and (8) residual claims, such as allegations of future harm, that Plaintiff has been

retaliated against and that his grievances were not left without response.  The Court will examine each in turn.[17]

### 1.   *Respondeat Superior* Claims

Here, Plaintiff's allegations against Horizon, Balicki and Doyle are based, either largely or in their entirety, on the facts that: (a) Horizon employs the medical personnel servicing Plaintiff's correctional facility; (b) Balicki is the warden of that facility; and (c) Doyle is the head nurse at the facility. However, Plaintiff's § 1983 claims cannot be based on one's position or on the fact of being the employing entity, even if the position is supervisory or the employer has control over its employees.  This is so because employers and supervisors cannot be held liable for the actions of their subordinates unless the litigant asserts facts showing these employers' or supervisors' *personal* involvement in the alleged wrongs.  See Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").  Therefore, Plaintiff's purely respondeat superior claims will be dismissed.[18]

### 2.   Claims Asserting Denial of Medical Care

---

[17] See also the attachment (provided at the conclusion of this Opinion) for a brief summary of Plaintiff's claims.

[18] Analogously, Plaintiff's claims against Wynn based on the fact that Wynn was employed at the facility where Plaintiff was housed fail to state a cognizable claim since these allegations do not show Wynn's involvement in any wrong.

Plaintiff's claims against Wynn, Doyle, Dghetto, Wiltsey, Hannah and Simmons suggest Eighth Amendment medical care claims. To state such a claim, Plaintiff must assert facts showing: "(I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003); see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would recognize the need for a doctor's attention.  See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (relying on White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)); Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

That being said, an inmate's disagreement with medical professionals "as to the proper medical treatment" does not support an Eighth Amendment violation.  See Lanzaro, 834 F.2d at 346.  Likewise, a claim that a doctor or medical practitioner was negligent does not rise to the level of an Eighth Amendment

violation.  See Estelle, 429 U.S. at 106.  Accordingly, a
"medical decision not to order an X-ray, or like measures, does
not represent cruel and unusual punishment.  At most it is
medical malpractice." Estelle, 429 U.S. at 107.  Analogously, a
medical practitioner's disagreement with another medical
practitioner's professional judgment or with the inmate's self-
diagnosis or the inmate's opinion as to the needed treatment is
not actionable.  See Napoleon, 897 F.2d at 110; see also Gatewood
v. Hendrick, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S.
925 (1967) (prisoner who did not claim that he was denied any
medical care but rather that he received only inadequate medical
care, and gave no indication that he sustained serious physical
injury as result of alleged inadequate treatment, failed to state
claim for relief); accord Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st
Cir. 2005) (a doctor's failure to respond to certain request for
services by the inmate, in context of the doctor's continued and
regular services, did not deprive the inmate of any meaningful
treatment); Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996) (a
prison medical staff's refusal to "dispense bromides for the
sniffles or minor aches and pains or a tiny scratch or a mild
headache or minor fatigue . . . does not violate the
Constitution"); Williams v. Williams, 2006 U.S. Dist. LEXIS 15008
(S.D. Ohio Mar. 31, 2006) (mild pains do not amount to a "severe
medical need"); Ford v. Lane, 714 F. Supp. 310 (N.D. Ill. 1989)

("The question whether an X-ray – or any additional diagnostic techniques or forms of treatment – is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment"); cf. Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973) (allegations of mere differences of opinion over matters of medical judgment fail to state a claim); Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970) (a difference of opinion between physician and patient cannot sustain a claim under § 1983); Hutchinson v. Civitella, 2003 U.S. Dist. LEXIS 15417 (S.D.N.Y. Sept. 4, 2003) (nausea, dizziness, light-headedness and emotional distress cannot support a constitutional claim); Universal Calvary Church v. City of New York, 2000 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 13, 2000) (insomnia does not qualify as a "serious injury"); Goff v. Bechtold, 632 F. Supp. 697 (S.D. W. Va. 1986) (denial of preferred course of treatment does not infringe constitutional rights).  Hence, allegations of brief delays in treatment, denial of treatment to not-serious medical conditions, denial of preferred treatment or tests, negligent or unsuccessful medical treatment, medical malpractice, etc., cannot support a claim of constitutional magnitude and, thus, cannot give rise to a viable § 1983 cause of action.  Correspondingly, to the extent Plaintiff's claims raised challenges plagued by such deficiencies, these challenges will be dismissed.

3.     **Verbal Harassment and Treats of Future Harm**

Plaintiff's challenges against Doyle, Wiltsey, Hannah and
Simmons allege that these Defendants "harassed" Plaintiff
verbally or were not as respectful to Plaintiff as he would have
preferred, while Plaintiff's claims against Vohland, Brown and
Armstrong assert that these officers utilized expletives when
they verbally threatened Plaintiff with future harm.

Acts of verbal harassment, however, while reprehensible,
cannot qualify as violations of the Eighth Amendment.  See
Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (D.N.J.
Dec. 8, 2005) ("[V]erbal harassment and taunting is neither
'sufficiently serious' nor 'an unnecessary and wanton infliction
of pain' under the common meaning of those terms.  'Verbal
harassment or profanity alone . . . no matter how inappropriate,
unprofessional, or reprehensible it might seem,' does not
constitute the violation of any federally protected right and
therefore is not actionable under [Section] 1983") (quoting
Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N. Y. 1998)); see
also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D.
Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give
rise to a constitutional violation[; even if it is] inexcusable
and offensive, [it] do[es] not establish liability under section
1983") (citations omitted); Abuhouran v. Acker, 2005 U.S. Dist
LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well

established . . . that . . . verbal harassment . . . do[es] not
state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d
607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706
(5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D.
Pa. 1995)); accord Prisoners' Legal Ass'n v. Roberson, 822 F.
Supp. 185, 187-89 (D.N.J. 1993).  Simply put, "[t]he Constitution
protects rights and freedoms, but it does not enshrine a code of
personal civility."  Hogan v. Twp. of Haddon, 2006 U.S. Dist.
LEXIS 87200, at *34 (D.N.J. 2006), aff'd, 278 F. App'x 98, 103
(3d Cir. 2008).

     Claims based on the statements qualifying as threats of
future harm are, by definition, speculative and, thus, not
cognizable in a § 1983 action.  "Speculation as to what might or
might not happen in the future" cannot serve as a basis for a
valid claim.  Dawson v. Frias, 2010 U.S. Dist. LEXIS 30513 at *8
(D.N.J. Mar. 30, 2010).  This is so even if the threats are
expressed in expletive or unethical terms.  See Collins v. Cundy,
603 F.2d 825 (10th Cir. 1979) (dismissing a prisoner's claim that
a prison officer laughed at the prisoner and threatened to hang
him).  Therefore, to the extent Plaintiff's challenges are based
on rude language, disrespectful statements, resort to expletives
or threats of future harm, these claims will be dismissed.

          4.   Request to "Press Charges"

Plaintiff's challenges against Wronyon, Ortiz and Balicki assert that they violated Plaintiff's rights by not instituting criminal proceedings against other officers or against the inmates who attacked Plaintiff.  However, Plaintiff is without a right to demand or force a criminal prosecution because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." Marinari v. Trump Plaza Hotel & Casino, 2012 U.S. Dist. LEXIS 80011, at **18 (D.N.J. June 8, 2012) (quoting Collyer v. Darling, 98 F.3d 211, 222 (6th Cir. 1996); see also Savage v. Arnold, 403 F. Supp. 172 (E.D. Pa. 1975) (stating a private party cannot, on his own, commence a criminal proceeding and citing United States v. Blierley, 331 F. Supp. 1182 (W.D. Pa. 1971)); Brown v. Duggan, 329 F. Supp. 207 (W.D. Pa. 1971); and Spader v. Wilentz, 25 F.R.D. 492 (D.N.J), aff'd, 280 F.2d 422 (3d Cir.), cert. denied, 364 U.S. 875 (1960)); accord United States v. Jarvis, 560 F.2d 494, 497 (2d Cir. 1977); Pokalsky v. SEPTA, 2002 U.S. Dist. LEXIS 16175 (E.D. Pa. Aug. 28, 2002).  This Court is without authority to do so on Plaintiff's behalf.

> It is well established that private citizens can neither bring a direct criminal action against another person nor can they petition the federal courts to compel the criminal prosecution of another person.  See Maine v. Taylor, 477 U.S. 131, 137 (1986); Heckler v. Chaney, 470 U.S. 821, 832 (1985); Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981); United States v. General Dynamics Corp., 828 F.2d 1356, 1366 (9th Cir. 1987). Accordingly, the district court [is obligated to]

refus[e] fil[ing] criminal charges or . . . compel[ing] prosecution based on those charges.

Ellen v. Stamm, 1991 U.S. App. LEXIS 30558 (9th Cir. 1991), cert. denied sub nom, Montalvo v. Stamm, 506 U.S. 1047 (1993).

Hence, Plaintiff's claims asserting that his rights were violated by a failure to commence a criminal proceeding will be dismissed.

### 5.  Claims Against Other Inmates

Plaintiff's challenges against inmates Green, Reos and Jason ensue from their alleged November 5, 2012, attack on Plaintiff. However, to recover against a defendant under 42 U.S.C. § 1983, Plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws, see Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) because Section 1983 does not create substantive rights.  Rather, Section 1983 provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights.  See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Groman, 47 F.3d at 633; see also West v. Atkins, 487 U.S. 42, 48 (1988); Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  The "color of state law analysis can be difficult, but is grounded in a basic and clear requirement, 'that the defendant in a § 1983 action have exercised power

Page 38

possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (quoting West v. Atkins, 487 U.S. 42, 49 (1988). "A private action is not converted into one under color of state law merely by some tenuous connection to [the state or a state facility or state employee]. The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." Groman, 47 F.3d at 638-39.[19]

An inmate's attack on another inmate cannot be attributed to the state in order to qualify the attacker as a state actor. See Ketchum v. County of Alameda, 811 F.2d 1243 (9th Cir. 1987) (rape of woman by inmate did not constitute state action); Miller v. Twomey, 479 F.2d 701 (7th Cir. 1973) (since the assaulting inmate was not granted authority enabling him to harm plaintiff, the assault did not qualify as a state action; it was a common law tort, not a violation of § 1983); Curry v. Lundy, 314 F. Supp. 344 (E.D. Pa. 1970) (claims that two other inmates conspired to destroy the plaintiff's property must be dismissed for failure to meet the color of law requirement); Simmons v. Maslysnky, 45

---

[19] For instance, where bondsmen act upon a delegation of the authority of police, the activities of these bondsmen become so closely intertwined with those of police officers that an implied state action could be read in the bondsmen's activities. See, e.g., Jackson v. Pantazes, 810 F.2d 426, 430 (4th Cir. 1987).

F.R.D. 127 (D. Pa. 1968) (claims that plaintiff was stabbed by
another prisoner after prison officials housed the attacker where
he could injure plaintiff, was dismissed for failure to meet the
color of law requirement).[20]

### 6.   Failure-to-Protect Claims

Here, Plaintiff's failure-to-protect challenges are two-
fold.  On one hand, Plaintiff asserts that unidentified officers
violated Plaintiff's rights by being absent from their duty posts
during the November 5, 2012, attack.  On the other hand, he
claimed that Vohland violated his rights by arranging the attack.

To state a claim for failure to protect from inmate
violence, Plaintiff must allege facts showing that: (a) he was
incarcerated under conditions posing a substantial risk of harm;
(b) the official was deliberately indifferent to that substantial
risk of harm; and (c) the official's deliberate indifference
caused the harm.  See Farmer v. Brennan, 511 U.S. 825, 833
(1994); Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012).

> Deliberate indifference in this context is a subjective
> standard: "the prison official-defendant must actually
> have known or been aware of the excessive risk to
> inmate safety." Beers-Capitol [v. Whetzel], 256 F.3d

---

[20] To the extent Plaintiff's assertions against Green, Reos
and Jason could be read as a claim that they acted upon Vohland's
request, such reading cannot cure the deficiencies of Plaintiff's
position since Plaintiff's allegations as to the connection
between Vohland and the inmates are speculative at best and,
paramount here, Vohland's actions did not supply the attack with
an imprimatur of the state action, since Vohland could neither
authorize nor "delegate" any attack upon Plaintiff.

> 120, 125 [(3d Cir. 2001)].  It is not sufficient that
> the official should have known of the risk. [See id.]
> at 133.  A plaintiff can, however, prove an official's
> actual knowledge of a substantial risk to his safety
> [by stating facts showing] that the risk was obvious."
> Id.

Bistrian, 696 F.3d at 367;[21] see also id. at 369 ("We acknowledge

that when inmates claim they are in danger, they confront prison

officials with an arduous task.  Prisoners may feign their fear

of physical harm simply to manipulate a transfer, in the hope,

for example, of obtaining more desirable living arrangements")

(quotation marks and brackets omitted).

     Where the allegations fail to offer the facts showing that

the prison officials were aware of a specific – rather than a

generic, vague or speculative – risk of harm, or where the

officers were not present during the attack and, therefore, could

not have intervened, the allegations fail to state a claim.  See

Knox v. Doe, 487 F. App'x 725 (3d Cir. 2012).  A fortiori, the

allegations are insufficient if the officers are both unaware of

the potential danger *and* have no opportunity to intervene.  See

_____

     [21] Analogously, a plaintiff may state a failure-to-protect
claim if he pleads the facts showing that the officers witnessed
the attack but failed to intervene and protect the plaintiff from
the harm being inflicted.  Accord Smith v. Mensinger, 293 F.3d
641, 650-51 (3d Cir. 2002)(an officer who fails to intervene when
other officers were beating an inmate is liable if the officer
had "a realistic and reasonable opportunity to intervene" and
"simply refused to do so"); compare Bistrian, 696 F.3d at 372
(the claim that "Officer . . . was deliberately indifferent
because he intervened only after several minutes of continued
pummeling" fails to state a claim) (brackets and quotation marks
omitted).

id.; see also Bistrian, 696 F.3d at 367-68 and 371-72 (noting that "[p]rison officials . . . escape liability [if they] were . . . unaware of a danger, or [if] they knew [about it] but believed (albeit unsoundly) that the risk . . . was insubstantial [or if they] actually knew of [that] risk to inmate [and] responded reasonably to the risk, even if the harm ultimately was not averted," and holding that, where the plaintiff was locked in a prison yard together with an inmate known for his systemic violence against other prisoners and who attacked the plaintiff, the prison officers were insufficiently aware of the danger to be liable for the plaintiff's injuries). Therefore, Plaintiff's claims asserting that certain officers violated his rights by being absent from their duty stations and, thus, having no ability to intervene, will be dismissed as facially meritless.

The facts showing an officer's direct or indirect *participation* in the attack could state a viable claim. "[A] plaintiff can . . . prove [such participation in the attack] 'in the usual ways, including inference from circumstantial evidence.'" Bistrian, 696 F.3d at 367 (quoting Farmer, 511 U.S. at 842). However, the plaintiff must assert such "circumstantial evidence" that *plausibly* – rather than merely possibly, even speculatively – connect the officer to the alleged wrong and show such participation. See Iqbal, 556 U.S. at 679. "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between
possibility and plausibility of 'entitlement to relief.'" <u>Id.</u>
(quoting <u>Twombly</u>, 550 U.S. at 557); <u>accord</u> <u>Bristol v. Settle</u>, 457
F. App'x 202 (3d Cir. 2012) (where the plaintiff alleged that the
prison officer told him, after the plaintiff was attacked by
other inmates, that the officer orchestrated that attack, the
plaintiff's allegations based on this post-attack statement did
not lend sufficient credence to his claims).  Plaintiff's failure
-to- protect claims thus fail.

### 7.   Excessive Force Challenges

Plaintiff's allegations against Maccori implicate the Eighth
Amendment protections against excessive force.  The landmark
Supreme Court case in the Eighth Amendment excessive force area
is <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).  The <u>Hudson</u> Court held
that "whenever prison officials stand accused of using excessive
physical force in violation of the Cruel and Unusual Punishments
Clause, the core judicial inquiry is . . . whether force was
applied in a good-faith effort to maintain or restore discipline,
or maliciously and sadistically to cause harm." <u>Id.</u> at 6-7.  In
doing so, the Court jettisoned the traditional objective prong
inquiry for establishing an Eighth Amendment claim. <u>See id.</u> at
22-23 (Thomas, J., dissenting) ("Ascertaining prison officials'
state of mind . . . is the only relevant inquiry in deciding
whether such cases involve cruel and unusual punishment"); <u>Brooks</u>

Page 43

v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000) ("In Hudson, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other"). Consequently, the Court must examine, subjectively, "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citation omitted).[22]

Notably, not all use of force is "excessive" under the Eighth Amendment and will rise to the level of a constitutional violation.  To determine whether force was used in "good faith" or "maliciously and sadistically," the courts have identified

---

[22]  However, a de minimis use of force is not repugnant to human decency and cannot state an Eighth Amendment claim of excessive force.  See, e.g., Hudson, 503 U.S. at 9-10.  This is not to say that a fact-finder would disregard the extent of the injuries suffered.  As the Supreme Court observed:

> Under the Whitley approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

Hudson, 503 U.S. at 7 (citations omitted).

Page 44

several factors, including: (1) the need of the application of force; (2) the relationship between the need and the amount of force that was used; (4) the extent of injury inflicted; (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.  See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).  Guided by those factors, the Court will assess whether Plaintiff's challenges against Maccori state a challenge meeting the plausibility test detailed in Iqbal.

### 8.   Residual Challenges

Finally, Plaintiff's allegations against unspecified defendants make references to: (a) future harm Plaintiff fears he might suffer; (b) Plaintiff's beliefs that he is being retaliated against; and (c) Plaintiff's disappointment with the fact that his administrative grievances were left unanswered.  These allegations fail to state a cognizable claim.

It is well established that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights," Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), and a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 F. App'x 751,

753 (3d Cir. 2005) (citing <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996)).  Thus, Plaintiff's assertion that his grievances were not replied to is facially without merit.

Plaintiff's challenges based on his speculative fear of future harm are equally deficient.  <u>See</u> <u>McCray v. Holmes</u>, 2012 U.S. Dist. LEXIS 152603, at *17 (D.N.J. Oct. 23, 2012) (noting that such "allegations, being challenges to a wholly speculative development, fail to state a cognizable claim" and citing <u>Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.</u>, 410 U.S. 719, 731 (1973) for the observation that legal "adjudication cannot rest on any such 'house that Jack built' foundation").

> Plaintiff's contention that his health and/or life
> might be in danger if Plaintiff is [he is placed in a
> certain] location is not viable.  At present, Plaintiff
> has not suffered an injury [he guesses he might suffer
> in the future].  Any claim not articulated in present
> terms is unripe since it fails to make factual
> assertions and, thus, is highly speculative. <u>See</u> <u>Kirby</u>
> <u>v. Siegelman</u>, 195 F.3d 1285 (11th Cir. 1999) (spelling
> out that a 42 U.S.C. § 1983 claim by a prisoner about
> his post-release condition cannot be deemed ripe for
> adjudication where the prisoner was not yet released
> and, thus, not yet suffered any injury).

<u>Rouse v. Pauliilo</u>, 2006 U.S. Dist. LEXIS 17225, at *9-10 (D.N.J. Apr. 5, 2006).[23]

Lastly, Plaintiff's speculations that he might be retaliated against analogously fail to state a viable claim.

---

[23] No statement made in Plaintiff's sixteen complaints, three amended complaints and numerous attachments to these pleadings offers facts indicating that Plaintiff is in imminent danger.

To state a claim under Section 1983 for violation of First Amendment rights, a plaintiff must plead the facts showing: (a) constitutionally protected conduct; (b) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (c) a causal link between the constitutionally protected conduct and the retaliatory action.[24]

While Plaintiff maintains that his commencement of civil actions caused retaliation, the undisputed time-line of the relevant events shows that the November 5, 2012, attack and all alleged threats took place long before Plaintiff commenced even his first legal action. Thus, Plaintiff's First Amendment challenges are necessarily deficient for failure to establish a causal link.

**B.    Plaintiff's Challenges Analyzed by Defendant**

As the foregoing illustrates, the bulk of Plaintiff's claims are without merit and subject to dismissal with prejudice; only a handful of his allegations warrants leave to amend. First, allegations against Horizon are deficient being based solely on the respondeat superior theory. Moreover, these allegations, being voluminous and detailed, indicate that Plaintiff has no

---

[24] See Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). The court typically decides the first element as a matter of law. See Model Civ. Jury Instr. 3d Cir. 7.4 (2011). Similarly, the Court need not instruct the jury regarding the second element where the element is not in dispute. See id. cmt.

facts implicating Horizon personally in any wrong. Thus, the deficiency of these challenges cannot be cured by re-pleading.

Second, the claims against Balicki are analogously deficient being based only on the theory of <u>respondeat</u> <u>superior</u>. Moreover, the two allegations that could be construed as Plaintiff's attempt to implicate Balicki personally (<u>i.e.</u>, the claims that Plaintiff's administrative grievances were not replied to and that no criminal proceeding was commenced against the prison officers or the inmates who attacked Plaintiff) are not cognizable in § 1983 review. Since Plaintiff's references to Balicki are as numerous as they are devoid of facts suggesting a plausible claim, it is apparent that Plaintiff cannot cure the deficiencies of his allegations by re-pleading. Thus, Plaintiff's claims against Balicki will be dismissed with prejudice.

Plaintiff's claims against Maccori are also insufficient, since Plaintiff: (a) asserted that Maccori pushed him with a force that caused Plaintiff's face to hit the door, thus caused opening of the stitches in Plaintiff's mouth; but (b) Plaintiff did not provide this Court with any facts shedding light on the circumstances of that incident and allowing this Court to intelligently analyze whether Maccori applied force to Plaintiff

in a good-faith effort to maintain discipline or maliciously. See Hudson, 503 U.S. at 6-7.[25]

Because Plaintiff's allegations did not allege sufficient factual content to "nudg[e] his claim . . . across the line from conceivable to plausible," they fail to meet the pleading requirements of Rule 8. Iqbal, 556 U.S. at 683 (citations and quotation marks omitted). However, the Court cannot rule out that, being granted an opportunity to clarify his challenges, Plaintiff might be able to assert facts stating a plausible excessive force claim. Thus, Plaintiff's allegations against Maccori will be dismissed without prejudice.

Plaintiff's allegations against Vohland are also deficient because they are wholly speculative as pled. Indeed, while Plaintiff's asserted that, a few weeks before the attack: (a) he was transferred by Vohland to the prison wing where his then-future attackers were housed; and (b) after that transfer, he witnessed a "hand contact" between Vohland and Green, and upon a short passage of time, observed Green, Reos and Jason smoking marijuana and cigars, these facts fail to meet the requirements

---

[25] Plaintiff's allegations against Wiltsey suggest that, while visiting the medical department on one occasion, Plaintiff refused to stop his insistence on having his pills crushed into powder, thus necessitating the officers' assistance with resolution of that incident and his removal from the medical department. His allegations against Maccori suggest that the January 1, 2013, incident also took place at the medical department and indicate that Maccori might have been summoned by the medical personnel who requested Maccori's assistance.

of Rule 8, as clarified in <u>Iqbal</u>.[26]  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679

("[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has

alleged – but it has not shown – that the pleader is entitled to

relief") (citation and internal quotation marks omitted).

    Moreover, since Plaintiff's allegations against Vohland are

extensive and elaborated upon in numerous Plaintiff's pleadings,

it appears unlikely that Plaintiff would be able to cure the

deficiency of his claims by re-pleading.  However, granted the

gravity of these allegations, the Court finds that leave to amend

Plaintiff's claims would not contradict the guidance provided by

the Supreme Court in <u>Foman</u> and the Court of Appeals in <u>Grayson</u>.

Therefore, out of an abundance of caution, the Court will dismiss

Plaintiff's claims against Vohland without prejudice.[27]

---

[26] The logic of Plaintiff's assertions is also not entirely
clear to this Court since: (a) a "hand contact" between Vohland
and Green is not indicative of any "payment;" (b) there would be
little reason for Vohland to wait for Plaintiff's actual transfer
to the unit where Green, Reos and Jason were housed to "pay"
these inmates for attacking Plaintiff, and (c) there would be
little reason for Green, Reos and Jason to wait a few weeks if
they actually agreed to carry it out.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679
(determining whether the allegations in a complaint are
"plausible" "requires the reviewing court to draw on its judicial
experience and common sense"); <u>cf.</u> <u>Thornton v. Micrografx</u>, 878 F.
Supp. 931, 938 (N.D. Tex. 1995) ("The court refuses to leave its
common sense at the courthouse steps").

[27] Plaintiff's claims against Fauconniere will, too, be
dismissed.  To the extent Plaintiff referred to Fauconniere on
the basis of Fauconniere's employ at the correctional facility or
Fauconniere's supervisory lieutenant position, or his absence
from the duty post during the attack, such claims would be

In contrast, the allegations against Brown and Armstrong
will be dismissed with prejudice since Plaintiff's facts, as pled
originally and elaborated upon in Plaintiff's later submissions,
unambiguously indicated that these claims are based solely on
Brown and Armstrong's resort to expletives and speculative
threats of harm that has never materialized.[28]  Since these
claims had been sufficiently detailed in Plaintiff's numerous
pleadings, granting him leave to amend these challenges would be
futile.  Thus, these claims will be dismissed with prejudice.

Analogously, Plaintiff's allegations against Green, Reos and
Jason will be dismissed with prejudice as deficient for failure
to show color of law, and Plaintiff's re-pleading of these
challenges cannot cure this core deficiency.

Plaintiff's allegations against Wronyon and Ortiz, based
solely on Plaintiff's displeasure with Wronyon and Ortiz's
decision not to commence a criminal proceeding, are facially
deficient.  Since Plaintiff has no right to demand commencement

---

dismissed with prejudice as wholly meritless.  However, in the
event Plaintiff has facts plausibly showing that Fauconniere was
personally involved in the November 5, 2012, attack, by
recruiting Plaintiff's attackers, Plaintiff would be allowed an
opportunity to state these facts in his amended pleading.

[28] Plaintiff's submissions indicate that he returned to the
prison general population but no harm has happened to him since
that return. Moreover, Plaintiff offers no facts suggesting that
he is in actual and imminent danger of any injury.

of any criminal proceeding, his challenges fail to state a viable claim and warrant no leave to amend.

Furthermore, Plaintiff's allegations against Doyle, while various and numerous, shall be dismissed with prejudice because these extensive challenges make it abundantly clear that Doyle has not violated Plaintiff's constitutional rights.  To start, Doyle's supervisory status or her employ at the facility cannot lend support to any Plaintiff's challenge: without asserting Doyle's personal involvement in an alleged wrong, Plaintiff cannot even begin mounting a viable claim.  Next, while Plaintiff is of the opinion that Doyle violated his rights when, being a nurse rather than a doctor, she recommended Plaintiff's surgeon not to extend Plaintiff's antibiotic treatment past a certain date, Plaintiff errs.  Doyle's expression of her disagreement with the surgeon's initial treatment plans (or her success in convincing the surgeon that her position was correct, or Doyle's coming to a medical conclusion that Plaintiff's treatment should be altered) cannot state a claim of constitutional magnitude; at most, Plaintiff's allegations suggest a medical malpractice challenge not cognizable in a Section 1983 review.

Furthermore, Doyle's directive to place Plaintiff in a certain locked room while he was en route from the hospital to the infirmary cannot support a viable claim since Plaintiff indicated that: (a) his was having his PICC line and medications

administered during the period when he was in the room; and (b) his displeasure with the fact that the room was locked or not as sanitized as he would have preferred support a viable challenge.

In the same vein, while the Court is mindful of Plaintiff's disappointment with the facts that he contracted MSRA, and that the infection left scars on his chest, Plaintiff's challenges unambiguously show that Doyle promptly reacted to Plaintiff's ailment, swiftly directed testing of the scar tissue and an antibiotic treatment of the disease, and duly quarantined Plaintiff. Thus, these assertions also fail to allege any cognizable wrong or to even hint at a denial of medical care.

Moreover, Plaintiff's later-developed allegations that he suffered "major delays" with the medical treatment of his November 5, 2012, injuries (which allegations, the Court notes, are at odds with Plaintiff's assertions made in his first two complaints) are facially deficient since the fact that Plaintiff had to wait either five or ten days for his surgery, even if true, cannot support a viable denial-of-medical-care challenge because nothing in Plaintiff's allegations suggests that he was left without medical attention during that interim, or that his injuries were so life-threatening to require immediate surgery.[29] See McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)("[T]he

---

[29] Plaintiff himself cannot recall if he waited five or ten days.

length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment"); see also Parrish v. Aramark Foods, Inc., 2012 U.S. Dist. LEXIS 46787, at 21-22 (D.N.J. Apr. 2, 2012) ("Plaintiff alleges that he was immediately evaluated by a nurse and that he saw a dentist [for a dental surgery] eleven days [later].  . . .  Although the nurse may not have been overtly sympathetic, there is nothing in the facts alleged to suggest that she did not arrange for appropriate care.  [Since] Plaintiff saw a dentist [for the surgery] eleven days after the injury, [he] fails to state a claim"); Rios-Salinas v. Lopez De LaSalle, 2011 U.S. Dist. LEXIS 124936 (D.N.J. Oct. 28, 2011) (where Plaintiff suffered a broken bone and had to wait six days for a surgery while being under continuous medical supervision and given Tylenol to control the pain, his claim failed to meet the Eighth Amendment standard).

In addition, to the extent Plaintiff strived to state a claim based on Doyle's medical finding that his insomnia and depression did not qualify as a "mental illness" necessitating treatment with medications, Plaintiff's self-diagnosis or self-rendered conclusion as to how he should have been treated cannot support a viable claim.  At most, Plaintiff's disagreement with Doyle's medical findings could hint at a medical malpractice claim not cognizable in Section 1983 review.

Finally, Plaintiff failed to assert any wrong on the part of Doyle when he alleged that, on July 15, 2013, she informed him that she scheduled Plaintiff's treatments by an oral surgeon and oral dentist.  The fact that no such treatments had taken place by September 3, 2013, cannot implicate Doyle in any wrong, since Plaintiff asserted no facts suggesting, even remotely, that Doyle took any action delaying, cancelling or otherwise obstructing his treatments (which she herself scheduled).[30]  Thus, Plaintiff's challenges are wholly without merit.[31]

In sum, while Plaintiff's factual allegations against Doyle are extensive and well-detailed, they verify that, regardless of the various ailments and injuries Plaintiff suffered, Doyle was never deliberately indifferent of his medical needs.  Therefore, Plaintiff's challenges will be dismissed with prejudice.

Much like Plaintiff's challenges against Doyle, Plaintiff's allegations against other nurses, that is, Wiltsey, Hannah and Simmons, fail to state or even hint at a viable claim; rather, these allegations unambiguously indicate that Plaintiff has no

---

[30] Plaintiff's allegations suggest his opinion that Dghetto could be responsible for the delay.

[31] Moreover, Plaintiff indicated that the treatments at issue were intended to remove the wiring and stitches in his mouth. However, no fact asserted by Plaintiff suggests that these wires and stitches present such a "serious medical need" that he cannot wait with their removal.  I.e., Plaintiff merely pled his impatience and displeasure, but these emotions – no matter how sincere – cannot support a viable constitutional claim.

facts to support his conclusion that these nurses violated his rights.  This is so because a medical practitioner's decision not to crush pills into powder for an inmate's consumption, or that practitioner's placement of an inmate in a locked room where the inmate is provided with both medications and medical supervision, or a practitioner's refusal to provide an inmate with medications for his self-diagnosed "mental illness," or that practitioner's utilization of a less-than-comforting style of interactions cannot support a claim of constitutional magnitude.  Since Plaintiff's repeated and elaborated upon his challenges against the nurses, his allegations indicate, with abundance, that he has no facts to support a viable claim.  Thus, his claims against Wiltsey, Hannah and Simmons will be dismissed with prejudice.[32]

The foregoing leaves the Court with Plaintiff's claims against Wynn, Dghetto and Plaintiff's residual allegations as to unspecified defendants.  Because Plaintiff's claims against Wynn

---

[32] Construing Plaintiff's claims against Doyle, Wiltsey, Hannah and Simmons as elaborations on his vague assertion that unspecified "medical nursing staff" showed "abuse and cruelty" to Plaintiff, the Court will dismiss these vague assertions for effectively the same reasons.  If anything, Plaintiff's systemically repeated, unelaborated self-serving statements that the nurses subjected him to "extreme abuse" and "extreme cruelty" present the very type of the allegations the Supreme Court directed the screening courts to ignore.  See Iqbal, 556 U.S. at 678 (A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement'") (citations and original brackets omitted).

are based solely on the fact of Wynn's employ at the facility and on Wynn being the person who had to convey Dghetto's decisions to Plaintiff, these allegations will be dismissed for failure to assert any wrong.  Moreover, because Plaintiff already stated his allegations against Wynn twice but failed to hint at any fact supporting a viable claim, these allegations will be dismissed with prejudice.

Plaintiff's claims against Dghetto fare no better, as the bulk of these challenges had already been repeated twice but failed to allege anything short of Plaintiff's disagreement with Dghetto's medical conclusions (that Plaintiff neck was healing sufficiently, and no MRI testing of the neck was needed).  Even if Plaintiff disagreed with Dghetto's medical findings, his position may, at most, support a medical malpractice claim but not a challenge of constitutional magnitude.  Thus, Plaintiff's allegations based on the alleged denial of MRI testing and Dghetto's medical conclusions will be dismissed with prejudice.

That being said, the Court is mindful of Plaintiff's latest, albeit unelaborated upon, statement that Dghetto might have cancelled, delayed or otherwise obstructed Plaintiff's treatments by an oral surgeon and oral dentist (that Doyle had scheduled). While Plaintiff's Horizon-III complaint encompassing this unelaborated-upon statement is insufficient, the Court cannot rule out that Plaintiff might be able to assert facts showing

Dghetto's actual obstruction of Plaintiff's treatments.  See Napoleon, 897 F.2d at 110 (denying or delaying a prescribed medical treatment for non-medical reasons violate the Eighth Amendment).  Thus, it seam prudent to grant Plaintiff a narrowly-tailored leave to amend with regard to this claim.

Lastly, Plaintiff's residual claims (based on lack of response to his grievances, alleged retaliation and speculative future harm) will be dismissed with prejudice, being deficient for the substantive reasons already detailed and not amenable to cure by re-pleading.

V.  **CONCLUSION**

For the foregoing reasons, four of Plaintiff's actions will be terminated, as duplicative, without assessment of the filing fee.  The complaints submitted in Plaintiff's twelve remaining actions will be filed, and the Clerk will be directed to assess the applicable filing fee in connection with each original pleading submitted in those actions.

Plaintiff's challenges will be dismissed.  His allegations against Maccori and Vohland, as well as one of his claims against Dghetto, will be dismissed without prejudice.  The remainder of Plaintiff's challenges will be dismissed with prejudice, and the Court will direct the Clerk to terminate all Defendants other than Maccori, Vohland and Dghetto.

In light of Plaintiff's prolific litigation efforts (and his tendency to raise duplicative challenges in the pleadings submitted in different actions), and being mindful of the substantial financial responsibility Plaintiff's submissions have already imposed upon him, the Court will direct Plaintiff to verify, in all his future actions, Plaintiff's intention to commence a new proceeding, his willingness to undertake the financial responsibility for each such new action and his <u>bona fide</u> belief that the claims he raises in a new pleading are neither duplicative of the claims already raised in his prior actions nor invalid in light of the guidance provided to him in this Opinion.  An appropriate Order follows.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: October 2, 2013

**ATTACHMENT –**
**A BRIEF SUMMARY OF PLAINTIFF'S ACTIONS AND CLAIMS**

| Index | Defendants | Allegations as to |
|---|---|---|
| 13-3028 | Balicki, Maccori, Vohland, Brown, Unspecified Medical Nursing Staff and Doctors, Green, Reos and Jason | Attack by Green, Reos and Jason; Vohland arranging the attack; Unspecified abuse and cruelty by medical staff; Maccori pushing Plaintiff; Brown threatening Plaintiff; Balicki not pressing charges; No response to grievances |
| 13-3791 | Balicki, Maccori, Vohland, Brown, Green, Reos, Jason, Armstrong, Wronyon, Ortiz, Fauconniere, Doyle, Wiltsey, Hannah and Horizon Healthcare | Attack by Green, Reos and Jason; Vohland arranging the attack; Maccori pushing Plaintiff; Brown threatening Plaintiff; Armstrong threatening Plaintiff; Unspecified officers' absence from the duty posts during the attack; Unspecified abuse, cruelty and harassment by Doyle, Wiltsey and Hannah; response to grievances |
| 13-3792 | Doyle | Doyle recommendations to Plaintiff's surgeon |
| 13-3793 | Hannah | Unspecified abuse and cruelty and placing Plaintiff in a locked room en route from the place of surgery to the infirmary |
| 13-3794 | Wiltsey | Unspecified abuse and cruelty and placing Plaintiff in a locked room en route from the place of surgery to the infirmary |
| 13-3795 | Green | Attack by Green, Reos and Jason |
| 13-3796 | Armstrong | Armstrong threatening Plaintiff by using expletives |
| 13-3797 | Wronyon | Wronyon not pressing charges |
| 13-4233 | Brown | Brown threatening Plaintiff |
| 13-4234 | Maccori | Maccori pushing Plaintiff |

| 13-4235 | Reos | Attack by Green, Reos and Jason |
|---------|------|----------------------------------|
| 13-4236 | Ortiz | Ortiz not pressing charges |
| 13-4236 | Vohland | Vohland threatening Plaintiff by using expletives, Vohland transferring Plaintiff to the place where the attack eventually occurred |
| 13-4606 | Horizon Healthcare, Balicki, Doyle, Dghetto and Wynn | Treatment of MRSA that left scars on Plaintiff's chest; The fact that the oral surgery took place 5 to 10 days after the attack; Denial of request for MRI; Conveyance of that denial |
| 13-4610 | Horizon Healthcare, Balicki, Doyle, Wiltsey and Simmons | Denial of medication for self-diagnosed "mental illness"; Refusal to crush pills; Unspecified "physical and mental threats" |
| 13-5365 | Horizon Healthcare, Dghetto and Doyle | Denial of request for MRI; Denial of medication for self-diagnosed "mental illness"; Disagreement with Plaintiff's self-evaluation of his recovery; Unspecified "major abuse and cruelty"; Delay in scheduled treatment |